IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

**V.**                                                    **CRIMINAL NO. 3:18CR165-CWR-FKB**

**JESSIE BULLOCK**

## MOTION TO DISMISS

Comes now Defendant Jessie Bullock and files this Motion to Dismiss. Mr. Bullock is charged with felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). In support of this Motion, Mr. Bullock presents the following:

### I. Legal Background.

Section 922(g)(1) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Amendment "guarantee[s] the individual right

to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's decision in *Bruen* set out "the standard for applying the Second Amendment" as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022).  In so holding, the Supreme Court rejected lower courts' use of means-end scrutiny in Second Amendment cases.[1]  *See id.* at 2125–27 & n.4 (abrogating *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)).  "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

And "when it comes to interpreting the Constitution, not all history is created equal." *Bruen*, 142 S.Ct. at 2136.  Courts must "guard against giving postenactment history more weight than it can rightly bear." *Id.*  Historical evidence from the late nineteenth century and the twentieth century "does not

---

[1] In simple terms, "means-end scrutiny" allows "judges to assess the costs and benefits of firearms restrictions" in a Second Amendment analysis.  *Bruen*, 142 S.Ct. 2129.

provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 & n.28; *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2267 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact").

## II. Argument.

### A. Introduction.

The Second Amendment's plain text covers the conduct proscribed by Section 922(g)(1), and the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. Section 922(g)(1) is therefore unconstitutional as applied.

### B. The Second Amendment's plain text covers possession.

Applying *Bruen*'s standard, the Second Amendment's plain text covers the "possess[ion]" of a firearm that Section 922(g)(1) criminalizes. 18 U.S.C. § 922(g)(1). The term "'[k]eep arms' was simply a common way of referring to possessing arms." *Heller*, 554 U.S. at 583.

And Mr. Bullock is one of "the people" under the Second Amendment's plain text. *See Heller*, 554 U.S. at 581 (noting that Second Amendment right "belongs to all Americans"); *id.* at 580 (quoting prior decision describing "the people" as the "class of persons who are part of a national community or who have

otherwise developed sufficient connection with this country to be considered part of that community"); *see also, e.g.*, U.S. Const. amend. I (using "the people" in Assembly-and-Petition Clause); U.S. Const. amend. IV (using "the people" in Search-and-Seizure Clause).[2] *Bruen* reiterates that the Second Amendment guarantees to "all Americans" the right to keep and bear arms. 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581).

Because the Second Amendment's plain text covers Mr. Bullock's conduct, the Second Amendment "presumptively protects" that conduct. *Bruen*, 142 S. Ct. at 2129–30.

### C. This application of Section 922(g)(1) is not consistent with the Nation's historical tradition of firearm regulation.

The prosecution cannot meet its burden of establishing that Section 922(g)(1), as applied to Mr. Bullock, is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Indeed, the Fifth

---

[2] Citing *Bruen*, the United States previously suggested that the Second Amendment's protections extend only to "law abiding, responsible citizens." *See* U.S. Resp. at 3, *United States v. Daniels*, No. 1:22-cr-58 (S.D. Miss. July 5, 2022). *Heller* and *Bruen* did not so constrain the scope of the term "the people." *See Heller*, 554 U.S. at 580–81 (discussing meaning of "the people"). In context, the *Heller* Court said elsewhere in its opinion only that, "*whatever else [the Second Amendment] leaves to future evaluation*, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). Nor did *Bruen* address the full scope of the term "the people," because it was "undisputed" in that case that the petitioners were "part of 'the people'" as "ordinary, law-abiding, adult citizens." *Bruen*, 142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 580). At bottom, "[n]othing in the Second Amendment's text draws [that] distinction with respect to the right to keep and bear arms." *See id.*

Circuit has stated that "the federal felony firearm possession ban, 18 U.S.C. § 922(g)(1), 'bears little resemblance to laws in effect at the time the Second Amendment was ratified,' as it was not enacted until 1938, was not expanded to cover non-violent felonies until 1961, and was not re-focused from receipt to possession until 1968." *Nat'l Rifle Ass'n of Am.*, 700 F.3d at 196, *abrogated by Bruen*, 142 S. Ct. 2111 (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)).

Then-Judge Barrett and other jurists have likewise concluded that "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see, e.g.*, *id.* at 453–64 (surveying history); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("[S]tates did not start to enact [felony-based prohibitions on possession] until the early 20th century."); *Folajtar v. Att'y Gen. of U.S.*, 980 F.3d 897, 914 (3d Cir. 2020) (Bibas, J., dissenting) ("[T]he issue of disarming felons is open. Precedent does not settle its historical limits. Rather, we must analyze the history ourselves and ask: Were all felons, dangerous and nondangerous alike, equally excluded from the Second Amendment? No, they were not."); *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[M]ore recent authorities have *not* found evidence of longstanding dispossession laws.").

5

Numerous scholars, too, have concluded that "no colonial or state law in eighteenth-century America formally restricted the ability of felons to own firearms." *See, e.g.*, Larson, *supra*, at 1374; C. Kevin Marshall, *Why Can't Martha Stewart Have A Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (observing that such prohibitions have their origins in the twentieth century).

The United States has agreed. Section 922(g)(1), the United States has said in briefing, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." U.S. Br. at *27–28, *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759 (1st Cir. May 13, 2011) (quoting *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011)). The United States' briefing has stated numerous times: "As for convicted criminals, Colonial societies do not appear to have categorically prohibited their ownership of firearms." *E.g.*, U.S. Br. at *25, *United States v. Staten*, No. 10-5318, 2011 WL 1542053 (4th Cir. Apr. 25, 2011) (citing Marshall, *supra*, at 696–728).

Against that backdrop, the prosecution cannot meet its burden of establishing that this application of Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Indeed, to uphold this application of Section 922(g)(1), the prosecution must establish a historical "*tradition*"—a robust record of regulations demonstrating an

6

accepted and enduring restriction on the Second Amendment right. *See, e.g.*, *id.* at 2156 (demanding a "broad tradition," not "outlier" regulations).[3]  And because Section 922(g)(1) "addresses a general societal problem that has persisted since the 18th century," *Bruen* instructs that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131.  So too "if earlier generations addressed the societal problem, but did so through materially different means." *Id.*  The inquiry may also turn upon "how" and "why" historical regulations burdened the Second Amendment right. *Id.* at 2132–33.

Because the prosecution cannot establish the requisite historical tradition, Section 922(g)(1) is unconstitutional as applied to Mr. Bullock.

**D.     *Bruen*'s holding governs.**

*Bruen*'s holding must prevail over *Heller*'s dictum.  The Supreme Court in *Heller* did "not undertake an exhaustive historical analysis" when it stated—in dictum, and without citation—that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which the Court described in a footnote as "presumptively lawful." *Heller*, 554 U.S. at

---

[3]    "[I]n our adversarial system, we follow the principle of party presentation. . . . Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, 142 S. Ct. at 2130 n.6 (quotation marks omitted).

7

626–27 & n.26;[4] *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010) (plurality) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (quoting same). The Fifth Circuit has described this language as "[d]icta in *Heller*." *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *accord, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 686–87 (6th Cir. 2016) (en banc); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010).

*Bruen* "did not attempt to bolster [the] reasoning"—or lack of it— underlying *Heller*'s dictum. *See Dobbs*, 142 S. Ct. at 2271. Instead, *Bruen* now holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively *protects* that conduct." 142 S. Ct. at 2126 (emphasis added). What's more, the Court holds that "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* "Only if" the government meets its burden, the Court holds, may a court uphold a regulation as constitutional. *Id.* *Bruen*'s holding must prevail over *Heller*'s footnote-consigned dictum. *See Heller*, 554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of

---

[4] The parties in *Heller* did not brief the historical background for *Heller*'s "presumptively lawful" measures. The respondent sought to justify those measures by arguing they would satisfy means-end scrutiny—a justification that *Bruen* now forecloses. *See* Respondent's Br. at 57, *Dist. of Columbia v. Heller*, No. 07-290 (Feb. 4, 2008); *Bruen*, 142 S. Ct. 2125–27.

8

any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").

So too must *Bruen*'s holding prevail over the Fifth Circuit's earlier analysis of Section 922(g)(1). In a 2001 case involving a prosecution under Section 922(g)(8)—not under Section 922(g)(1)—the Fifth Circuit suggested that certain "narrowly tailored" exceptions to the Second Amendment are permissible. *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001); *see United States v. McGinnis*, 956 F.3d 747, 755 (5th Cir. 2020) (explaining that *Emerson* "presumably . . . appl[ied] some form of means-end scrutiny *sub silentio*"). The court in *Emerson* then cited three sources from the 1980s for the proposition that it is "clear that felons . . . may be prohibited from possessing firearms." 270 F.3d at 226 n.21, 261.

But *Bruen* rejected means-end scrutiny. *Bruen*, 142 S. Ct. at 2125–27. And since *Emerson*, the Fifth Circuit, other courts and jurists, numerous scholars, and the United States itself have reached the opposite historical conclusion. *See supra*, pp. 4–7 of this Motion. What's more, *Bruen* now instructs that it is the government's burden to "affirmatively prove" that any regulation is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," which the United States cannot do here. *Bruen*, 142 S. Ct. at 2127.

Nor do cases after *Emerson* obviate the need to apply *Bruen*'s holding. In the pre-*Heller* case of *United States v. Darrington*, the Fifth Circuit simply quoted *Emerson* in holding that "Section 922(g)(1) does not violate the Second Amendment." 351 F.3d 632, 633–34 (5th Cir. 2003). And after *Heller*, the Fifth Circuit declined to revisit *Darrington* based on *Heller*'s dictum. *See United States v. Anderson*, 559 F.3d 348, 352 & n.6 (5th Cir. 2009); *McGinnis*, 956 F.3d at 755. Yet *Bruen*'s holding establishes a standard that courts now must apply. *Bruen*, 142 S. Ct. at 2126, 2129–30.

### III.  Conclusion.

Under *Bruen's* "standard for applying the Second Amendment," the Second Amendment's plain text covers Mr. Bullock's possession of a firearm. The prosecution cannot meet its burden of demonstrating that this application of Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." And so Section 922(g)(1) is unconstitutional as applied.

WHEREFORE, Mr. Bullock respectfully asks this Court to grant his Motion to Dismiss.

Respectfully submitted, August 29, 2022.

**Omodare B. Jupiter**
Federal Public Defender

*/s/ Michael L. Scott*
Michael L. Scott (MB # 101320)
Assistant Federal Public Defender
N. and S. Districts of Mississippi
200 S. Lamar St., Suite 200 North
Jackson, Mississippi 39201
Telephone: (601)948-4284
Facsimile: (601)948-5510
Email: mike_scott@fd.org

Attorney for Defendant

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that this Motion was filed with the Clerk of the United States District Court for the Southern District of Mississippi on August 29, 2022, using the electronic case filing system, which in turn sent an electronic copy of this Motion to all attorneys of record in this case.

*/s/ Michael L. Scott*
Michael L. Scott
Attorney for Defendant